PEARSON, C. J., dissenting.
PETITION for dower. The defendants pleaded in bar that the plaintiff willingly left her husband and went away and lived in adultery with a certain negro slave, without any reconciliation. On the trial evidence was given on the part of the defendants that the husband and wife were living apart, and that a few months after the separation he filed a bill against her for a divorce for cause of adultery with a certain negro, by whom she became pregnant of a child, of which she was afterwards delivered. When the copy of the bill was served, it was read to her by the witness, who asked her if it was so, and she held up the child and said it would show for itself; whereupon the witness stated he *Page 247 
thought it was a negro child, and asked her if it were not; and (362) she replied that she was not the first white woman that negro had taken in; that when he first came about her, she hated him, but that after a while she loved him better than anybody in the world, and she thought he must have given her something; that the witness then said he did not blame her husband for what he had done; and she replied she did not blame him for anything except that he drove her off before he knew whether it would be a black child or not; and the witness remarked that she supposed he had good reasons to believe it. On the part of the defendants further evidence was given that the husband and wife had been married and lived together several years, until three or four months before the husband's death, and that upon the separation the wife went to the house of another person to stay; and evidence was also given tending to show, as it seemed to the court, that after the separation the plaintiff committed adultery with a negro man, and that she continued apart from her husband, without any reconciliation, until his death, and since that time has been a lewd woman.
On the part of the plaintiff a witness deposed that on the day of the separation the husband sent for him, and as he was going to the house he met the plaintiff coming away in tears, and that when he got there the husband told him that he had understood his wife was pregnant by a negro man, and he had driven the strumpet off, and she should never live with him again.
Counsel for defendant moved the court to instruct the jury that if the plaintiff cohabited with a negro man before the separation, and that came to the husband's knowledge, and was the cause of the separation, the plaintiff did willingly leave her husband within the meaning of the law, and was barred of her dower, although the husband ordered her away. The court refused to give the instruction as prayed (363) for, and told the jury that if the husband ordered her away, though for the cause of adultery, she could not be considered as willingly leaving her husband within the meaning of the act, and would not be barred of her dower, though she had committed adultery.
The counsel then prayed the court to instruct the jury that there was evidence that the plaintiff continued with her adulterer after having left her husband. The court refused to give the instruction, and told the jury there was no evidence that she continued with her adulterer, within the meaning of the law.
Counsel for the defendant further prayed the court to instruct the jury that if the plaintiff was guilty of adultery, without the sanction of her husband, the manner of her going away from him, whether by or without his orders, made no difference; and also that the mere manner of her remaining apart, whether in adultery or not, made no difference; that *Page 248 
adultery, without the sanction of the husband, was a bar to the plaintiff's right of dower, and that nothing removed it but reconciliation. The court refused to give the instructions as prayed, but instructed the jury that the act of separation must be voluntary on the part of the wife, and that there must be a remaining away and a continuance in repeated acts of adultery in order to bring the case within the meaning of the law, and that a single act of adultery with her adulterer after the separation was not sufficient to bar the plaintiff.
The jury found the issue for the plaintiff, and after a judgment and award of the writ, an appeal was allowed to the defendants.
If the case depended upon the correctness of the latter parts of the instructions, the judgment would be reversed, as Lord Coke states very explicitly in 2 Inst., 435, that albeit the wife doth not continually remain in adultery with the adulterer, yet if she be with him and commit adultery, it is a tarrying within the statute 13 Ed. I., ch. 34, which is reenacted in Rev. Stat., ch. 121, sec. 11; and that if she once remain with the adulterer in adultery, and after he keepeth her against her will, or if the adulterer turn her away, yet she shall be saidmorari cum adultero within the statute. Hetherington v. Graham, 6 Bing., 135, is also a clear authority, and upon sound reason, that there need not be any adultery before the wife leaves the husband, nor any elopement with the man with whom she afterwards commits adultery, but that she is barred by adultery with any person, entirely supervenient on a separation by mutual consent. There was evidence which in the opinion of the court, tended to prove an act of adultery with a negro after the separation, though he is not identified to be the same one with whom the plaintiff was guilty while living with her husband; and that case the authorities show to be within the statute, provided it was also within it in respect to the cause of her leaving her husband and his house. As to that, it seems clear upon the evidence, and stands admitted in the first part of the instructions prayed, that the husband ordered or drove her away. That being so, it appears to the Court that the plaintiff cannot be said to have willingly left her husband; but that, on the contrary, she left him against her will, and by his compulsion, and therefore the case is not within the act, though she afterwards committed adultery with a new or former adulterer. That being so, all the other instructions became immaterial, and any error in them ought not to produce a reversal of the judgment. *Page 249 
The words of the act are in the conjunctive, and plain in (365) themselves; and in such a case it would seem to be the province of the court to receive and carry them into execution, according to their obvious meaning. Therefore, apparently, the ingredient that the wife should willingly leave her husband was in every case essential to the bar of the dower given by the statute. But it is yielded that, as our statute is but a reenactment of an ancient one in England, the interpretation put on the original judicially, or by a commentator so wary and wise as Lord Coke, ought to be authoritative as to the construction of ours. Some passages in Lord Coke's reading on the Stat. West. II., have been relied on to show that it is not material whether she left the husband willingly or not; and hence it is inferred that even the compulsion of the husband makes no difference. But the passages do not seem at all to authorize that inference. They are that "Albeit the words be in the disjunctive, yet if the woman be taken away, not sponte, but against her will, and after consent, and remain with the adulterer, etc., she shall lose her dower; for the cause of the bar of her dower is not the manner of the going away, but the remaining with the adulterer in avowtry"; and then he states a case in which a man had made a sale and conveyance by deed of his wife to another man, whereon it was pleaded in bar, to a writ of dower, quia recessit a marito suo in vita sua, et vixit ut adultera cum, etc.; and upon a demurrer to a replication of the husband's deed, it was adjudged for the defendant. Now, those two cases are entirely distinct from the present, and seem no way analogous to it. In the latter case there was no compulsion on the wife by any one — either the adulterer or the husband. Nothing like it can be implied from any part of the pleadings, the deed, or Lord Coke's statement. But the contrary is apparent, namely, that the woman went willingly, for it is stated, just after the passage above quoted, and in contrast with it as a case in which she left sponte, while in the other it was otherwise; the words being,"if thewife goeth away" — not by compulsion of her husband, but with her husband's consent, and agreement with A. B., and after A. B. (366) commit adultery with her and she remains with him, she shall be barred of her dower." That, therefore, is only a case where both parties were willing she should leave, and, in fact, it was as much the wife's act as the husband's, and was, indeed, the authority on which that precise position was adjudged in Hetherington v. Graham, supra. The defendant's case seems to derive as little support from the other passage. The case under Lord Coke's consideration was obviously that of the forcible abduction of a woman by some other man, contrary alike to her own and her husband's will, and her consent afterwards to live in adultery with her violator; and it is in reference to that case it is said she loses her dower, for the cause of the bar of her dower is not the *Page 250 
manner of the going away, but the remaining with the adulterer. That is founded on good reason; for the husband was in no manner accessory to her dishonor, and she did finally, though not at first, consent to it. But it cannot be supposed that Lord Coke would put on the same footing a case in which a husband aided in forcing his wife to submit to the violation of her person by one who took her away against her will, though, after her degradation, she might continue to live with the ravisher. Nor can it be more reasonably collected as his opinion that any case of compulsory expulsion of the wife by her husband could possibly be deemed her leaving and going away willingly. The two propositions are directly contradictory in terms; and no one could suppose such a case within the words or meaning of the law, if the expulsion were wanton and unprovoked. In such a case the subsequent adultery would be regarded as a natural consequence of the husband's wrong, and he could take no benefit from it nor deprive his wife of any.
But it is said this was not a wrong done to the woman, but it was an act merited by her depravity and baseness, and demanded by his honor; and it is true there could be no greater injury inflicted on the (367) rights or feelings of the husband than that perpetrated by this woman. But the Court has no right to be wise beyond the Legislature, and make a law for a hard case, nor, which is the same thing, bring such a case within the statute the words of which will cover it, and which was made diverso intuitu. The laws must be framed and construed upon general principles, and not vary to meet contingencies not in the contemplation of the Legislature. Therefore, the construction of the act cannot be influenced by the fact that the husband drove this woman away, by reason that committing the particular adultery, which was her offense, she descended to the lowest depths of infamy, more than if it had been for any other cause, as drunkenness, profanity, ungovernable temper, furious passions, and violent assaults, which rendered her society an intolerable annoyance and made his life burdensome. Now, for these several acts a husband may be more or less excusable in the eye of morality and the law in refusing to cohabit with his wife and expelling her from his house, so as to have it in quiet to himself and the other members of his family. But that is not the point. It is, on the contrary, very different. By the common law a wife was entitled to dower, though she were an adultress. A statute was then made whereby she was not deprived of dower merely by committing adultery, but was barred of it if she willingly left her husband and afterwards lived away from him and committed adultery. Adultery previous to her elopement or departure is not alluded to in the statute, and cannot control the construction. If that had been intended to be a bar, or to affect the bar, why did not the statute confine itself at once to adultery simply? Instead *Page 251 
of doing so, the object of the act is adultery subsequent to the willing leaving of the husband. It was very fairly argued at first that the case contemplated in the act was not only that expressly mentioned, in which the wife willingly left the husband, but that also the unworthiness of the husband was to be implied. That, however, is settled (368) otherwise, and it is held that if they concur in separating, the case is within the act. But no case can be found in which the woman did not leave the husband willingly, but did so unwillingly, and, moreover, by the compulsion of the husband himself, in which it was held against the wife, nor is there any dictum to give color to the proposition.